[OCTOBER TERM, 1917.]

## TAYLOR v. FIRST NATIONAL BANK OF CODY, ET AL.

(No. 861; Decided October 8th, 1917; 167 Pac. 707.)

SALES—RESCISSION OF SALE FOR FRAUD—LIABILITY FOR CONVERSION—FRAUD ENTITLING PURCHASER TO RESCIND—RETURN OF PURCHASE PRICE.

1. Where the purchaser of an automobile contracted for a new car in good condition, and the car delivered was not such, and plaintiff, one of the sellers thereof, knew of its defects when he received a note and checks from the purchaser, which fact he failed to disclose to the purchaser, who, upon learning of the defects in the car, promptly rescinded the sale and was returned his note and checks by a person associated with plaintiff in the sale, such person and the purchaser were not liable to plaintiff as for a conversion of the instruments.

2. Where the purchaser of an automobile contracted for a new car in good condition, and the car delivered to him was not such, the seller knowing that it was materially damaged when he received the purchaser's note and checks in payment, there was a fraud, entitling the purchaser to rescind the sale and receive back the note and checks.

Error to District Court, Park County; Hon. P. W. Metz, Judge.

Action by George Taylor against First National Bank of Cody, Wyoming, a corporation, and others to recover damages for the alleged conversion of a note and two checks given in payment on the purchase of an automobile. Other material facts are stated in the opinion. Judgment for defendants and plaintiff brings error.

*E. E. Enterline,* for plaintiff in error.

There was a conversion of plaintiff's property by defendants. (38 Cyc. 2005.) The bank and Deegan were bailees and estopped to deny the title of their bailor, the plaintiff. (5 Cyc. 170, 172; Hale on Bailments, 22; 3 Ency. of L. 758; Kahaley v. Haley, 47 Pac. 23; Geren v. Hollenbeck, 132 Pac. 1164.) Bennett's defense of fraud is insufficient. (20 Cyc. 13; Kountze v. Kennedy, 147 N. Y. 124, 49 A. S. 651; Power v. Turner, 37 Mont. 521, 97 Pac. 950.) There is no allegation of injury made by Bennett nor of damage in any sum. Taylor and Deegan were not partners. (Bank v. Ingham, 51 Mont. 438, 153 Pac. 1005.) The defenses alleged by defendant bank are insufficient. The evidence showed that it was a custom of the bank to receive deposits out of banking hours through Mr. Deegan. The bank is liable under the facts for the conversion of plaintiff's property. (Valdetero v. Cits. St. Bk., 26 So. 425; Hanson v. Heard, 38 Atl. 788; Jumper v. Comm. Bk. of Col., 26 S. E. 725; L'Herbette v. Pitts. Natl. Bk., 38 N. E. 368; Martin, et al., v. Webb, et al., 110 U. S. 7, 28 L. Ed. 49.) The court erred in excluding offered testimony showing that the note in question contained a provision for the payment of attorney's fees. That provision constituted an element of its value. Plaintiff should have been permitted to testify concerning his reasons for delivering the checks and note in question to defendant Deegan. He had a right to show that he was acting in good faith and that his intentions were to deliver the checks and note to Deegan, as cashier.

*W. L. Walls*, for defendants in error.

The plaintiff and Deegan acted together in the sale of the automobile, plaintiff being the agent of the manufacturer. The car was defective and plaintiff knew of its defects at the time he delivered it to Bennett, and received the note and checks in payment. Bennett discovered the defects on the day following payment and immediately rescinded the contract, demanding the return of his note and checks, which were returned by Deegan. The amendment of Bennett's answer as permitted was proper. (Sec. 4437, Comp. Stats. 1910.) Plaintiff was guilty of actionable fraud. (14 Ency. L. 19-21.) Upon rescission, the vendee of goods may return the same forthwith. (Parson on Contracts, 615.) Bennett was entitled to the return of his note and checks. Taylor and Deegan were working together under an agreement to share profits in the sale of automobiles and to that extent. were partners, and Bennett dealt with him with that understanding. They are estopped from denying the partnership. (22 Ency. of L. 35.) The charge that Bennett conspired with his co-defendants to deprive plaintiff of his property is absurd. There was no conspiracy. (6 Ency. L. 848-865.) The car was sold to Bennett by Taylor, Taylor having purchased it from the manufacturer. The defendant bank had nothing whatever to do with the transaction. The bank never received the note and checks. The question of custom as to receiving deposits outside of banking hours was neither pleaded nor proven, and is no part of the case. (12 Cyc. 1037; Adams v. Osterback, 15 Howard U. S. 539; Valdetero v. Bank, 26 So. 425.) An examination of the cases cited by plaintiff on the custom of banks, etc., will show that they are not in point under the facts here. The judgment should be affirmed.

BEARD, JUSTICE.

Action by plaintiff in error against defendants in error to recover damages for the alleged conversion of a note and two checks. Trial to the court. Judgment for defendants. Plaintiff brings error.

The averments of the petition necessary to an understanding of the questions to be determined are, in substance, that about June 19, 1913, plaintiff was the owner and lawfully possessed of one check given by Clara E. Bennett and drawn on defendant bank for four hundred dollars, payable to the order of plaintiff.   One check for two hundred and fifty dollars drawn by defendant Bennett on the Park Loan & Trust Co., payable to the order of plaintiff; and one promissory note of defendant Bennett for one thousand dollars, payable to the order of plaintiff.   Each of said instruments bearing date June 19, 1913, and of their face value.   That thereafter and about June 19, 1913, plaintiff endorsed said checks and delivered them and the note to defendant bank with directions to said bank to deposit said checks to his credit and to keep the note until plaintiff could dispose of the same, the bank having agreed to purchase said note in a short time thereafter.   That thereafter and on or about the said June 19, 1913, the defendants acting and conspiring together for the purpose of depriving plaintiff of his property, wrongfully and unlawfully disposed of and converted said checks and note to their own use, to plaintiff's damage in the sum of two thousand dollars, for which sum he prayed judgment against defendants jointly and severally.

The defendants filed separate answers.   The material part of the answer of defendant bank was a denial that the note and checks were ever delivered to it, and denied the alleged conspiracy.

Defendant Deegan admitted that the bank was a corporation and denied the other allegations of the petition.   For further answer he alleged that prior to June 19, 1913, he and plaintiff were acting together and in concert for the purpose of selling an Oakland automobile of the 1913 model to defendant Bennett.   That thereafter Bennett gave to plaintiff certain checks and a note in payment for said car, which he avers were probably the note and checks described in the petition; that plaintiff delivered the same to this defendant in a sealed envelope on Sunday, at this defend-

ant's home, and requested him to deposit the checks to plaintiff's credit and place the note in plaintiff's safety deposit box in the defendant bank. That on the following Monday morning before banking hours Bennett demanded the return of said note and checks, stating that the car was defective, that this defendant being satisfied upon examination of the car of its materially damaged condition, as agent of plaintiff and as connected with him in the sale of the car, delivered to Bennett the sealed envelope as delivered to him by plaintiff. That he had no transaction with the defendant bank in connection with the note and checks; that the checks were not presented to the bank for payment, but with the note were delivered to Bennett without the knowledge, consent, connivance or procurement of the bank.

Defendant Bennett alleged in his answer, in substance, that the car in question was sold to him by plaintiff and defendant Deegan acting as co-partners in the transaction. That they represented the car to him as a new Oakland automobile of the 1913 model, in first-class condition and free from all breaks, damage, or disorder. That he relied upon said representation and received the car and gave the note and checks in payment therefor to plaintiff. That the day following such payment he discovered its damaged condition, rescinded the sale, returned the car and received from Deegan said note and checks. That plaintiff and Deegan knew of the broken condition of the car and falsely represented it to him, and that he was deceived thereby and so induced to deliver the note and checks to plaintiff. That plaintiff received the car and has ever since been in possession of the same.

Plaintiff in reply denied generally the affirmative matters set up in the several answers.

The District Court was not requested to make findings of fact, and the finding was a general finding in favor of defendants. The question here is not so much what the law applicable to the facts is, as what facts the evidence establishes to which the law is to be applied. There is a conflict

in the evidence on the material questions involved, but we think the evidence fairly sustains the judgment, and supports the conclusions that the plaintiff and defendant Deegan were jointly interested in the sale of the car to Bennett. That they were to furnish a new car in good condition, at actual cost, but were to have the use of the car from time to time for demonstration purposes. That the car was ordered by plaintiff from the Lininger Implement Company of Sheridan, Wyoming; and was driven to Cody by one Irvine, who drove and demonstrated it for a few days, plaintiff being absent from Cody at that time. That on Irvine's departure, Deegan, by direction of plaintiff before he left Cody, delivered to Irvine a draft for the purchase price of the car and charged the same to plaintiff's account in the defendant bank of which Deegan was cashier. That Deegan delivered the car to Bennett. That neither Deegan nor Bennett at that time knew of the damaged condition of the car. That plaintiff returned and for a week or ten days the car was used and driven by each of the parties, Bennett, Deegan and plaintiff; and while being so used by plaintiff he discovered the damaged condition of one of the wheels. That before Bennett gave the note and checks in question, plaintiff's attention was called to a crack in the frame of the car by one Barron. That plaintiff did not inform Bennett of those defects. That they were not readily discoverable. That the note and checks were delivered by plaintiff to Deegan in a sealed envelope, in the evening after banking hours at Deegan's home, with directions to deposit the checks to plaintiff's credit in the bank and place the note in his safety deposit box in the bank, as plaintiff was going away that night or early next morning. That after delivering the note and checks to plaintiff, Bennett discovered the crack in the frame of the car and in the morning before the bank opened drove the car to the bank and called Deegan's attention to the broken frame and was directed by Deegan to put it in a garage of which plaintiff was manager, and at the same time handed to Bennett the envelope, which had not been opened, containing the note

and checks, and saying, in substance, I suppose you want your settlement back? The car was put in the garage by Bennett, where it remained. Some time thereafter—the time not being stated—a spring was taken off the car by direction of plaintiff and put on his car. That plaintiff conducted quite an extended correspondence with Irvine and the Lininger Co. in an effort to have the car replaced by another, or otherwise to adjust the matter. The checks were not credited to plaintiff's account in the bank and the note was not placed in his box, neither having been out of Deegan's possession until delivered to Bennett. That the cashier of defendant bank had previously and in a number of instances received outside of the bank and out of banking hours, checks from customers for deposit to their respective accounts and were so credited.

Upon the facts, we discover no error in the judgment. Bennett contracted with plaintiff and Deegan for a new car in good condition. The car delivered was not such; and plaintiff knew that it was materially damaged when he received the note and checks, which fact he failed to disclose to Bennett. That was a fraud entitling Bennett to rescind the sale and to receive back the note and checks. He did so, and returned the car to the party to the transaction from whom he received it, and who was jointly bound with plaintiff to furnish such a car as they had represented to Bennett. Not only so, but, after the car had been returned and placed in the garage, plaintiff exercised control over it and by his direction a spring was removed from it and placed on his own car. The return of the note and checks to Bennett was no more than he was entitled to and could have enforced had a return been refused in the circumstances disclosed by the evidence as we view it, and as it must have been viewed and understood by the trial court.

The bank was made a party defendant on the theory that the delivery of the note and checks to Deegan, who was its cashier, was a delivery to the bank, and that it was a party to the conversion of them. But as we hold that there was

no wrongful conversion of the property that question is eliminated from the case and need not be considered. Finding no error in the judgment, it is affirmed.    *Affirmed.*

    POTTER, C. J., concurs.